## Case No. 3,633a.

DAVIS et al. v. FIVE HUNDRED AND SEVENTY-FOUR BAGS OF COFFEE.

[N. Y. Journal of Commerce, May 26, 1862.]

Circuit Court, S. D. New York. May 24, 1862.

SHIPPING—CHARTER PARTY—BILL OF LADING—FREIGHT—COSTS.

[1. A charter party from New York to Rio Janeiro and back made the cargo subject to the round freight. The charterers at Rio shipped coffee owned in equal shares by themselves and the consignees, under a bill of lading signed by the master, upon which the consignees advanced more than the value of the charterers' share. There was no evidence that the consignees had any knowledge of the charter party. Held, that the bill of lading controlled, and that the coffee was liable only for the freight stipulated therein.]

[2. On a libel for freight under a charter party, claimants tendering freight due under a bill of lading, but not having brought the money into court until after appeal by them, allowed, on reversal, only costs of appeal.]

[Appeal from the district court of the United States for the southern district of New York.

[Libel in rem by Ira B. Davis and others against 574 bags of coffee for freight due under a charter party. Troost, Schroeder & Co. appeared as claimants. A decree was entered for libellants (case unreported), and claimants appealed.]

NELSON, Circuit Judge. This is a libel filed by Davis and others, owners of the vessel G. H. Townsend, to recover some $3,000 balance of freight upon a charter party from this port to Rio Janeiro and back. The claimants resist the claim, on the ground that the coffee was shipped to them as consignees, by the house of Schroeder & Co., of Rio, under a bill of lading signed by the master of the vessel, in the usual way, by which he agrees, among other things, to deliver the coffee to the consignees or their assigns, they paying freight for the said goods at forty-five cents per bag; that they had tendered the amount of the freight, and were ready to pay the same. There is some confusion in the facts of the case, as it appeared in the court below; but, on the appeal, a new answer was filed, and new proofs taken, which have cleared it of many of the imperfections and obscurities in that court. The libellants rely, and must rely in order to succeed, upon the allegations that the coffee shipped belonged to the firm of Schroeder & Co., of Rio, who, it is claimed, were the charterers of the vessel, and that, by the terms of the charter party, the cargo is made subject to the round freight of the vessel from New York to Rio and back. The claimants deny this, and set up that they were the original owners of one-half of the coffee, and the firm at Rio of the other; and that they had advanced, on this other half, one thousand pounds sterling, at the time of the shipment. And I am of opinion, upon the proofs, that this ground of defence is established; and further, that the advance of the thousand pounds exceeded the value of the moiety of the coffee, upon which it was advanced when it arrived at this port. The point, therefore, that the coffee belonged to the charterers, has failed. It was insisted on the argument, on the part of the libellants, that there was some sort of partnership interest between the house of the claimants and that at Rio; but the proofs furnish no ground for the argument. Indeed, the contrary is expressly proved. The shipment by the house at Rio was made upon the orders of the house in New York, and the advance

of the one thousand pounds by their agent at Rio, whose authority is not questioned. It is well settled in this court, and has been recently affirmed in the supreme court, that a ship, chartered as the G. H. Townsend was, may be set up as a general ship by the charters: and that as to goods shipped by a merchant, in the usual way, under bills of lading signed by the master, the contract in the bill of lading governs, and not the charter party. This principle covers the one moiety of the coffee, as the shipment was made by the claimants through the house at Rio. The other moiety stands upon different ground, as that was shipped by the charterers. If there was nothing else in the case, this moiety would be chargeable for the freight under the charter party. But an advance was made upon this, as we have seen, by the claimants, on the faith of the bill of lading; and there is no evidence in the case that they or their agent had any knowledge at the time of the charter party; and hence, having advanced their money bona fide, we think they have the superior equity. They had a right to assume the master was authorized to sign the bill of lading, and that it bound his owners; and, of course, that the only lien for freight was that specified therein. As we have said, this advance exceeded the value of this moiety of the coffee. The claimants tendered the freight, under the bill of lading, before the filing of the libel in the court below, which was refused; but the tender was not followed by bringing the money into court. It has been placed in the registry of this court since the appeal by the claimants. This does not, however, supply the omission in the court below, as matter of practice. The libellants are also embarrassed in the case, as their libel is founded solely upon the charter party, without any reference to the bill of lading. We have a discretion over the costs, and think the case one in which it should be exercised. We shall reverse the decree below, with costs to the claimants and appellants, in this court only.